## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BRADLEY S. CORDIS, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-21-873-D |
| | ) | |
| STATE FARM MUTUAL | ) | |
| AUTOMOBILE INSURANCE CO., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant State Farm Mutual Automobile Insurance Co.'s Motion for Summary Judgment. [Doc. No. 43]. Plaintiff Bradley S. Cordis filed a response [Doc. No. 49] to which Defendant replied [Doc. No. 54]. The matter is fully briefed and at issue.

## BACKGROUND

Plaintiff asserts two causes of action against Defendant: 1) breach of contract; and 2) breach of duty of good faith and fair dealing. The causes of action relate to Defendant's denial of Plaintiff's claim under his insurance policy. Plaintiff initially filed this action in state court, and Defendant timely removed the case to federal court based on diversity jurisdiction under 28 U.S.C. § 1332(a).

Defendant seeks summary judgment in its favor with respect to both of Plaintiff's causes of action. It argues that Plaintiff's insurance claim was properly adjusted, so it has no contractual or tort liability. Alternatively, Defendant seeks partial summary judgment

1

on Plaintiff's bad faith claim on the ground that a reasonable and legitimate coverage dispute exists.

## UNDISPUTED FACTS

In February of 2019, Defendant issued an insurance policy (the "Policy") covering Plaintiff's 2013 Ram 2500 pickup (the "Truck"). Plaintiff's Truck had an auxiliary fuel tank in its bed. The Truck also had two fuel filters: one under the hood, and one in the rear of the Truck. The Policy included comprehensive physical damage coverage for loss regarding the Truck, and defined "loss" as "direct, sudden, and accidental damage." *See* [Doc. No. 43-3] at pp. 16-17. There was no coverage under the Policy for any part or equipment of a covered vehicle if that part or equipment was damaged "as a direct result of . . . wear and tear." *Id.* at p. 21.

On September 10, 2020, Plaintiff serviced his Truck at FinishLine Motorsports and Auto Repair in Harrah, Oklahoma. He then traveled to Thunder Travel plaza at I-40 and Choctaw Road in Choctaw, Oklahoma. After filling his tank up with diesel fuel, he drove the Truck to his home in McLoud, Oklahoma. When he was two to three miles from his home, he flipped a switch that enabled the Truck to draw fuel from the auxiliary fuel tank. Upon doing so, the Truck started to misfire. The next morning, the Truck again misfired, so Plaintiff drove the Truck to the Joe Cooper Dodge dealership to have it inspected.

Joe Cooper Dodge determined that the auxiliary fuel tank was contaminated with an excessive amount of water, dirt, and algae, and that the fuel system would need to be replaced. Plaintiff submitted a claim to State Farm on September 18, 2020, with an alleged

date of loss of September 11, 2020; the claim was assigned claim number 36-11P2-09J (the "Claim").

On September 18, 2020, Defendant wrote to Plaintiff explaining the "Estimate Assist" program and details surrounding his inspection. The letter noted that a repair estimate was required to be submitted by the repair facility of Plaintiff's choice. Joe Cooper Dodge submitted an estimate to Defendant in the amount of $12,656.90 to replace the Truck's fuel system. The estimate included photos of fuel samples drawn from the Truck. On September 23, 2020, this estimate was reviewed by Defendant's estimator, Cameron Wellik, who observed that the Truck had an auxiliary fuel tank. He noted that "if diesel sits [in the auxiliary fuel tank] long enough . . . diesel fuel will naturally separate into diesel and water." *See* [Doc. No. 43-6] at p. 17. Mr. Wellik concluded that "after reviewing [the Joe Cooper Dodge] estimate and facts of loss, there appears to be no sudden loss" and that the engine misfires were most likely "caused by lack of maintenance." *Id.*

On September 30, 2020, Plaintiff told a representative of Defendant that it "seem[ed] as if someone poured water into [his] gas tank." *Id.* at p. 15. He stated that the fuel cap was missing, but that there was no rain recently. So, Plaintiff speculated that vandals poured water into the gas tank, as he believed that to be the only plausible explanation for the water in the fuel tank. On October 6, 2020, Plaintiff told Defendant's claim specialist Gregory Blake that he "purchased fuel two days before the loss date and the cap was on the [Truck]." *Id.* at p. 14.

On October 15, 2020, Mr. Wellik reiterated that "damages appear to have been happening over time." *Id.* After reviewing Mr. Wellik's analysis, Mr. Blake asked Plaintiff

3

to provide maintenance records for his Truck. Plaintiff provided records showing that he purchased one fuel filter on January 13, 2019, and two fuel filters on September 10, 2020, the day before the loss.

On October 16, 2020, Mr. Blake requested a consult from Defendant's CRASH unit. Defendant's CRASH unit provides automotive technical and repair information to internal associates to aid in claims handling. This includes information relating to fuel contamination claims, such as what to look for when investigating these types of claims to determine whether the loss is direct, sudden, and accidental.

On October 19, 2020, the CRASH unit provided research that conveyed 1) that it is not uncommon to find water in diesel fuel, but that a sensor will trigger a light on the dash telling the driver to remove water which, if ignored, will cause damage over time; 2) if there is an auxiliary fuel tank mounted in the vehicle, it may contribute to water being introduced into the fuel system; 3) fuel filters should be replaced every 20,000 miles, except when the vehicle is used in conditions such as trailer towing and off-road—then it should be replaced every 10,000 miles; 4) while in most cases water in the diesel fuel will not have any effect on the engine, a major amount of water in a diesel fuel system will stop the vehicle in a very short distance.

Claim specialist Carter Raley took over Plaintiff's claim in late October of 2020. He reviewed the claim file, including the CRASH unit's report, estimate and pictures from Joe Cooper Dodge, and maintenance records submitted by Plaintiff. Mr. Raley also obtained a CARFAX Vehicle History Report on Plaintiff's Truck.

On October 28, 2020, Mr. Raley called Joe Cooper Dodge and spoke to Adam Carder, the service advisor, who advised that Joe Cooper Dodge found "an abundance of water and algae in the tank." *Id.* at p. 12. After jointly reviewing the maintenance records, Mr. Carder "agreed the damage was likely due to lack of maintenance." *Id.* That same day, Mr. Raley recommended to his team manager that the claim be denied for absence of a direct, sudden, and accidental loss. A team manager for Defendant wrote to Plaintiff informing him that State Farm had completed its investigation and was denying any and all coverage because the resulting damage was not direct, sudden, and accidental.

After State Farm denied his claim, Plaintiff sought a second opinion from Quality Diesel Performance in Choctaw, Oklahoma. On November 23, 2020, Plaintiff's insurance agent, Mike Muecke, advised Defendant that Quality Diesel had prepared a new estimate and noted that the damage could have been caused by bad fuel. Mr. Muecke submitted Quality Diesel's estimate to Defendant on the same date.

Randy Kirk, the owner of Quality Diesel, also determined that a complete replacement of the fuel system was necessary, as there was a large amount of water in the fuel tank, injection pump, injector line, and fuel injectors. Mr. Raley reviewed Quality Diesel's estimate and concluded that nothing in the estimate showed that the damage was from a single event.

On December 2, 2020, Plaintiff informed Mr. Muecke that certain gas stations where he purchased fuel had been cited by the Oklahoma Corporation Commission for water in their fuel. The next day, Mr. Muecke forwarded information about the two stations to Defendant.

Mr. Raley reviewed the information provided by Mr. Muecke, but noted that this information did not change State Farm's decision, as Joe Cooper Dodge had confirmed that the damage was from long-term exposure to water.

## STANDARD OF DECISION

Summary judgment is proper "if the movant shows there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id.* at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id.* If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, then all other factual issues regarding the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Id.* at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *see also Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir.1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but may consider other materials in the record." Fed. R. Civ. P. 56(c)(3); *see Adler*, 144

F.3d at 672. The court's inquiry is whether the facts and evidence of record present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## DISCUSSION

### I.    Bad Faith Claim

Defendant moves for summary judgment with respect to Plaintiff's bad faith claim. Under Oklahoma law, an insurer has an implied duty to deal fairly and act in good faith toward its insured, and the violation of that duty gives rise to an action in tort. *Christian v. American Home Assurance Co.*, 577 P.2d 899, 904 (Okla. 1977). To succeed on a claim for the violation of the duty of good faith and fair dealing, a plaintiff must prove four elements: "(1) claimant was entitled to coverage under the insurance policy at issue; (2) the insurer had no reasonable basis for delaying payment; (3) the insurer did not deal fairly and in good faith with the claimant; and (4) the insurer's violation of its duty of good faith and fair dealing was the direct cause of the claimant's injury." *Ball v. Wilshire Ins. Co.*, 221 P.3d 717, 724 (Okla. 2009).

The "critical question" in this analysis "is whether the insurer had a good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding . . . payment under the policy." *Id.* at 725 (internal quotation omitted); *see also Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093–94 (Okla. 2005) ("A central issue in any analysis to determine whether breach has occurred is gauging whether the insurer had a good faith belief in some justifiable reason for the actions it took or omitted to take that are claimed violative of the duty of good faith and fair dealing."). Thus, "[i]f there is a

legitimate dispute concerning coverage or no conclusive precedential legal authority requiring coverage, withholding or delaying payment is not unreasonable or in bad faith." *Ball*, 221 P.3d at 725.

Under this standard, an insurer does not act in bad faith by disagreeing with an insured regarding coverage or the amount of loss or resorting to a judicial forum. *Christian*, 577 P.2d at 905; *see also Bailey v. Farmers Ins. Co.*, 137 P.3d 1260 ("Insurers are free to make legitimate business decisions (and mistakes) regarding payment, as long as they act reasonably and deal fairly and in good faith with their insureds."). Nor does an insurer act in bad faith when it engages in conduct that is merely negligent. *Badillo*, 121 P.3d at 1094. Importantly, however, under Oklahoma law, "if there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case." *McCorkle v. Great Atl. Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981).

In arriving at its decision to deny Plaintiff's claim, Defendant relied on 1) the estimate from Joe Cooper Dodge; 2) Plaintiff's maintenance records; and 3) information supplied by Defendant's internal automotive and technical repair team. Plaintiff argues that Defendant "refused to consider pertinent facts" and instead selectively gathered facts to deny the claim, causing its investigation to be inadequate. *See* [Doc. No. 49] at p. 19. Specifically, Plaintiff points to Defendant's failure to (1) investigate his theory that vandals poured water into the fuel tank by contacting local police; (2) obtain weather records surrounding the date of loss; (3) inquire into the service stations where Plaintiff obtained

fuel; (4) inspect the Truck, tank, fuel system, or fuel found in the fuel system; and (5) speak with the mechanic who ultimately repaired Plaintiff's vehicle.

Under the undisputed facts and as a matter of law, the Court concludes that Defendant's conduct cannot be reasonably perceived as tortious. As discussed, the insurer's duty to investigate is not unlimited, and is judged according to the circumstances. *See Buzzard*, 824 P.2d at 1109 (holding that an insurer has a duty to "conduct an investigation reasonably appropriate under the circumstances"); *see also Roberts v. State Farm Mut. Auto. Ins. Co.*, 61 F. App'x 587, 592 (10th Cir. 2003) ("Under Oklahoma law, however, an insurer's investigation need only be reasonable, not perfect."). The conduct complained of, at best, evidences negligence on Defendant's part, but this is not tantamount to bad faith. Based on the estimate from Joe Cooper Dodge, Plaintiff's service records, and information supplied by Defendant's internal automotive and technical repair team, Defendant had a justifiable reason for its decision to deny Plaintiff's claim. Accordingly, summary judgment is granted to Defendant on Plaintiff's bad faith claim. Having found for Defendant on Plaintiff's bad faith claim, the Court finds that his claim for punitive damages is moot as a matter of law.

## II.    Breach of Contract Claim

Defendant also moves for summary judgment on Plaintiff's breach of contract claim. Defendant argues that here, the undisputed facts show that Plaintiff's loss was not "direct, sudden, and accidental," so Plaintiff is not entitled to comprehensive physical damage benefits under his Policy.

Under Oklahoma law, the party asserting coverage bears the burden to establish a claim is within the scope of coverage. *Okla. Sch. Risk Mgmt. Tr. V. McAlester Pub. Sch.*, 457 P.3d 997, 1002 (Okla. 2019). "In Oklahoma, unambiguous insurance contracts are construed, as are other contracts, according to their terms." *Max True Plastering Co. v. U.S. Fid. & Guar. Co.*, 912 P.2d 861, 869 (Okla. 1996).

Based on the current summary judgment record, the Court finds that a genuine dispute of material fact exists regarding whether Plaintiff's loss was "direct, sudden, and accidental." Plaintiff has posited two theories surrounding the Truck's fuel system failure: (1) vandals poured water into his fuel tank; and (2) "bad fuel" from the Thunder Travel Plaza caused the failure. Defendant does not dispute that either event would constitute a "direct, sudden, and accidental" loss. On the current record, the Court cannot conclude that this issue is "so one-sided that one party must prevail as a matter of law," *Anderson*, 477 U.S. at 251-52, and thus the Court must deny Defendant's motion for summary judgment with regard to Plaintiff's breach of contract claim.

## CONCLUSION

In summary, Plaintiff has failed to present evidence sufficient to create a material fact dispute regarding his claim that Defendant breached its duty of good faith. Whether Defendant has satisfied its contractual obligations regarding Plaintiff's claim under his Policy remains an issue to be determined.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment [Doc. No. 43] is **GRANTED** in part and **DENIED** in part as set forth herein.

**IT IS SO ORDERED** this 28th day of September, 2022.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge